IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARIEN ROWAYTON BANK, | No. 4:22-CV-01394 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| JACK E. McGREGOR, JOANNAH McGREGOR, and DOUGLAS H. McGREGOR, | |
| Defendants. | |

MEMORANDUM OPINION

APRIL 10, 2023

Former businessman Jack McGregor sent his son, Douglas, two separate $7,000 checks in 2020. These transfers, which Jack initiated in Pennsylvania and Douglas accepted in Virginia, occurred around the time Darien Rowayton Bank ("DR Bank") initiated a legal action in Pennsylvania state court seeking to recover on a substantial debt stemming from an $800,000 home equity line of credit it previously extended to Jack and his ex-wife. According to DR Bank, the transfers to Douglas constitute part of an orchestrated scheme to help Jack evade his obligations to DR Bank. And as such, DR Bank has sued Jack and Douglas (as well as Jack's current wife) for engaging in fraudulent transfers and participating in a civil conspiracy.

Douglas now moves to dismiss the claims against him for lack of personal jurisdiction. But by accepting and depositing the checks from his father, Douglas caused the money to be transferred from Jack's Pennsylvania-based bank account to Douglas's account in Virginia, allegedly in furtherance of Jack's scheme to obstruct a Pennsylvania judgment. That set of facts subjects Douglas to this Court's jurisdiction. His motion is therefore denied.

I.  BACKGROUND

   A.  Factual Background

In November 2007, DR Bank issued Jack McGregor and his then-wife, Mary-Jane Foster, a home equity line of credit totaling $800,000.[1] The couple made timely (if nominal) payments on the line of credit until late 2016.[2] But in December of that year, while in the process of finalizing their divorce, they stopped making payments altogether, leaving a principal balance of $798,611.03.[3] DR Bank sent the couple a notice of default in January 2017, and then filed a summons and complaint seeking to recover on the line of credit with the Superior Court of Connecticut—the state in which DR Bank maintains its principal place of business.[4] In December 2017, the Connecticut Superior Court entered a judgment in favor of DR Bank that, with interest and attorneys' fees, totaled $844,283.07.[5]

---

[1] Doc. 1 (Compl.) ¶ 10.
[2] *Id.* ¶¶ 13–14.
[3] *Id.*
[4] *Id.* ¶¶ 2, 15–16.
[5] *Id.* ¶ 17; *see also* Doc. 1-1, Ex. A (Dec. 18, 2017, Connecticut Superior Court Order).

Ms. Foster agreed to a payment plan with DR Bank to repay her share of the judgment, but Jack McGregor refused to assume responsibility for his liability.[6]

Sometime after the judgment was entered, Jack relocated to Mifflinburg, Pennsylvania to live with his current wife, Joannah McGregor.[7] In January 2020, once it learned of Jack's move, DR Bank filed a Praecipe to File and Index Foreign Judgment in the Court of Common Pleas of Union County, Pennsylvania.[8] In effect, DR Bank sought to have Pennsylvania courts recognize and enforce the Connecticut-based judgment.[9] Jack opposed the effort, filing a Petition to Open Judgment, but that was denied.[10]

In the Pennsylvania state court proceedings, Jack has represented that he is unable to satisfy any obligations to DR Bank because he is effectively insolvent.[11] DR Bank deems this all but inconceivable, noting that Jack "has enjoyed a long and successful career in business" that "allowed him to accumulate significant wealth over a period of six decades."[12] Indeed, Jack was the President and Chief Executive Officer of Aquarion Water Company, a publicly traded utility company

---

[6] Doc. 1 (Compl.) ¶ 18.
[7] *Id.* ¶ 19.
[8] *Id.* ¶ 22; *see also* Doc. 1-2, Ex. B (Jan. 22, 2020, Praecipe to File and Index Foreign Judgment).
[9] *Id.*
[10] Doc. 1 (Compl.) ¶ 23; *see also* Doc. 1-3, Ex. C (Dec. 22, 2020, Order Denying Petition to Open Judgment).
[11] Doc. 1 (Compl.) ¶¶ 27, 32.
[12] *Id.* ¶ 25.

that serves several states in New England, as well as a co-founder, part-owner, and senior executive of the Pittsburgh Penguins hockey team.[13]

According to DR Bank, Jack's insolvency is attributable not to an unfortunate change in circumstances, but rather to a systematic effort to "deplete his bank account with the intent of avoiding payment on the [j]udgment."[14] DR Bank alleges that Jack divested himself of substantially all assets through a series of transfers to his current wife, Joannah, and to his son, Douglas.[15]

Relevant here, in 2020, around the time the Connecticut judgment was indexed in Pennsylvania, Jack made two separate $7,000 payments to Douglas.[16] According to Douglas, his father sent him two $7,000 checks, characterized as "gifts," through the mail to Douglas's home in Virginia.[17] Douglas accepted the payment and deposited the checks, causing the money to transfer from Jack's Pennsylvania-based bank account to Douglas's Virginia-based bank account.[18] Douglas represents that those checks are the only "monetary payments of any kind" that he received from his father in the last five years.[19]

---

[13] *Id.* ¶ 26.
[14] *Id.* ¶ 55.
[15] *Id.* ¶¶ 30–55.
[16] *Id.* ¶¶ 49, 51.
[17] Doc. 11-1, Ex. A (Nov. 2, 2022, D. McGregor Decl.) ¶¶ 5–6.
[18] *Id.*; *see also* Doc. 13 (DR Bank Opp.) at 6.
[19] Doc. 11-1, Ex. A (Nov. 2, 2022, D. McGregor Decl.) ¶ 7.

B.     **Procedural History**

In September 2022, DR Bank initiated this suit against Jack, Douglas, and Joannah McGregor, alleging violations of Pennsylvania's Voidable Transactions Act as well as civil conspiracy.[20] Although Jack and Joannah filed an answer to the complaint,[21] Douglas filed a motion to dismiss for lack of personal jurisdiction.[22] Douglas attached to his motion a declaration containing jurisdictionally relevant factual averments,[23] which DR Bank has not contested. Douglas's motion to dismiss has been fully briefed and is now ripe for disposition.[24]

## II.    LAW

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move for the dismissal of all claims against him due to a lack of personal jurisdiction. Once a defendant challenges a court's authority to exercise personal jurisdiction over him, the plaintiff bears the burden of establishing that personal jurisdiction exists.[25] That burden, however, is relatively light: absent an evidentiary hearing, the plaintiff need only plead a *prima facie* case of personal jurisdiction to survive a motion to dismiss.[26]

---

[20]  *See* Doc. 1 (Compl.).
[21]  *See* Doc. 9 (Jack & Joannah McGregor Answer).
[22]  Doc. 11 (D. McGregor Mot. to Dismiss).
[23]  *See* Doc. 11-1, Ex. A (Nov. 2, 2022, D. McGregor Decl.).
[24]  *See* Doc. 12 (D. McGregor Br.); Doc. 13 (DR Bank Opp.); Doc. 14 (D. McGregor Reply).
[25]  *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009).
[26]  *Carteret Savings Bank, FA v. Shushan*, 954 F.2d. 141, 142 n.1 (3d Cir. 1992).

When considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the court must "accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor."[27] That said, at no time may the plaintiff rely on "mere allegations" or "the bare pleadings alone"; it must instead "respond with actual proofs" such as "sworn affidavits or other competent evidence."[28] Because a Rule 12(b)(2) motion to dismiss is "inherently a matter that requires resolution of factual issues outside the pleadings," the court, in resolving such a motion, may rely on documents outside the pleadings.[29]

### III.   ANALYSIS

The question before the Court here is whether money transfers from a Pennsylvania resident's Pennsylvania-based bank account to an individual who lives and banks outside the Commonwealth are sufficient, standing alone, to subject the recipient to personal jurisdiction in Pennsylvania. Rule 4(e) of the Federal Rules of Civil Procedure permits a district court to assert personal jurisdiction over non-residents to the extent allowed under the law of the state where the court sits. Pennsylvania's long-arm statute authorizes this Court to entertain jurisdiction over non-resident defendants "to the fullest extent allowed

---

[27] *Belden Technologies, Inc. v. LS Corp.*, 626 F.Supp.2d 448, 453 (D. Del. 2009); *see also Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).
[28] *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984).
[29] *Id.* (cleaned up).

under the Constitution of the United States," based "on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."[30] Consequently, the reach of this Court's personal jurisdiction under the Pennsylvania statute is coextensive with the due process clause of the Fourteenth Amendment to the United States Constitution.[31]

Here, DR Bank argues that the Court's authority over Douglas emanates from specific, rather than general, personal jurisdiction.[32] The specific personal jurisdiction inquiry focuses on the relationship among the defendant, the forum, and the present litigation.[33] To that end, a plaintiff advocating for the invocation of specific personal jurisdiction has at its disposal two distinct legal frameworks: (a) the traditional three-part inquiry that stems from the Supreme Court of the United States' seminal ruling in *International Shoe Co. v. Washington*;[34] and (b) the "effects test" that the Supreme Court established in *Calder v. Jones*.[35] DR Bank contends that this Court can exercise specific jurisdiction over Douglas

---

[30] 42 Pa. C.S.A. § 5322(b).
[31] *See Time Share Vacation Club*, 735 F.2d at 63.
[32] *See* Doc. 13 (DR Bank Opp.) at 14 (arguing that "this Court should deny Douglas's motion to dismiss for lack of personal jurisdiction" because it "has specific personal jurisdiction over Douglas").
[33] *Pinker*, 292 F.3d at 368.
[34] 326 U.S. 310, 316 (1945); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985); *Pinker*, 292 F.3d at 368–69.
[35] 465 U.S. 783 (1984); *see also Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) ("If a plaintiff satisfies . . . the 'effects test,' the plaintiff can demonstrate a court's jurisdiction over a defendant even when the defendant's contacts with the forum alone are too small to comport with the requirements of due process under our traditional analysis.") (internal quotation marks, ellipses, and citations omitted).

under either framework.[36] Accordingly, the Court considers each framework in turn.

### A. Traditional Specific Personal Jurisdiction Analysis

The traditional specific personal jurisdiction inquiry unfolds in three steps. First, the district court must determine whether the defendant "purposefully directed his activities" at the forum.[37] Second, the court considers whether the plaintiff's claims "arise out of or relate to" at least one of those specific activities.[38] And third, if the first two requirements are met, the court may consider whether the exercise of jurisdiction otherwise "comport[s] with fair play and substantial justice."[39]

For the first step, DR Bank argues that Douglas "knowingly caus[ed] money to be drawn from Jack's Pennsylvania-based bank account," thereby "purposefully avail[ing] himself of Pennsylvania's jurisdiction," as the two transfers "go to the very heart of DR Bank's efforts to satisfy its judgment."[40] Douglas responds that he did not "purposely direct[]" his activities at Pennsylvania; he "received two payments from his father that were deposited into [his] Virginia bank account,"

---

[36] *See* Doc. 13 (DR Bank Opp.) at 5 ("Applying either framework yields the same result: DR Bank has made a sufficient showing for this Court to exercise specific jurisdiction over Douglas.").
[37] *Burger King*, 471 U.S. at 472 (internal quotation marks and citation omitted).
[38] *Helpicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).
[39] *Burger King*, 471 U.S. at 476 (quotation marks omitted).
[40] Doc. 13 (DR Bank Opp.) at 6–7.

meaning that "the action of accepting money occurred in Virginia, not Pennsylvania."[41]

On this, the Court finds particularly instructive a 2020 ruling by the Honorable William S. Stickman IV of the United States District Court for the Western District of Pennsylvania in *Kyko Global, Inc. v. Prithvi Information Solutions Ltd.*[42] There, Judge Stickman held that specific personal jurisdiction existed as to the foreign corporate and individual defendants based on four wire transfers initiated by a Pennsylvania co-conspirator from a Pennsylvania-based bank account.[43] Judge Stickman described the wire transfers as "decisive to the issue of personal jurisdiction," explaining that because the wire transfers "were initiated *in*, and managed *from*, this forum" (i.e., Pennsylvania) and used to "facilitat[e]" the "conspiracy to defraud the [p]laintiffs," the wire transfers were "alone sufficient to trigger specific personal jurisdiction under Pennsylvania's long-arm statute."[44] In reaching that conclusion, Judge Stickman distinguished the case from the United States Court of Appeals for the Third Circuit's holding in *Dollar Savings Bank v. First Security Bank of Utah, N.A.* and other similar cases

---

[41] Doc. 14 (D. McGregor Reply) at 5–6.
[42] 2020 WL 1159439 (W.D. Pa. Mar. 10, 2020).
[43] *Id*. at *28.
[44] *Id*.

9

that "involved the wire transfer of a loan repayment *to*—not *from*—Pennsylvania."[45]

Here, as in *Kyko*, the wire transfers were initiated in, and managed from, Pennsylvania. In 2020, Jack McGregor sent his son, Douglas, two separate $7,000 checks, which Douglas accepted and deposited.[46] At the time he mailed the checks, Jack resided with his wife in Pennsylvania, and the checks, once deposited, caused money to be transferred from Jack's Pennsylvania-based bank account to Douglas's Virginia-based bank account.[47] Moreover, as alleged, the transfers were initiated as part of an ongoing conspiracy centered in Pennsylvania: Jack sought to remove the money from his bank account (and therefore from the Commonwealth) to avoid his outstanding obligations to DR Bank in contravention of a judgment entered in Pennsylvania.[48]

Douglas asks the Court to disregard these considerations and instead rule that wire transfers are by themselves categorically insufficient to satisfy the "purposefully directing" prong of the traditional specific personal jurisdiction

---

[45] *Id.* (citing *Dollar Savings Bank v. First Security Bank of Utah, N.A.*, 746 F.2d 208, 214–15 (3d Cir. 1984); *T.J. Raney & Sons, Inc. v. Security Savings & Loan Assoc.*, 749 F.2d 523, 525 (8th Cir. 1984); *Tatoian v. Andrews*, 100 F. Supp. 3d 549, 554 (W.D. Va. 2015)).

[46] *See* Doc. 1 (Compl.) ¶¶ 49–50; *see also* Doc. 11-1, Ex. A (Nov. 2, 2022, D. McGregor Decl.) ¶¶ 4–6.

[47] *Id.*

[48] *See* Doc. 1 (Compl.) ¶¶ 52–55; *see also* Doc. 1-2, Ex. B (Jan. 22, 2020, Praecipe to File and Index Foreign Judgment); Doc. 1-3, Ex. C (Dec. 22, 2020, Order Denying Petition to Open Judgment).

inquiry.[49] For this, Douglas directs this Court to a series of rulings by district courts outside this circuit that addressed "whether the requirements of minimum contacts may be satisfied by a foreign bank's performance of wire transfers on behalf of its clients."[50] But those rulings are inapposite. The defendants in those cases were "sophisticated bank[s]" and other financial institutions that simply "wire[d] funds from customers' accounts . . . at customer requests," not individuals who personally received the wire transfers at issue.[51] The courts in those cases seemingly considered that distinction highly relevant, emphasizing both the defendant banks' "non-purposive role in wire transfers from customer accounts to accounts at banks in [the forum state],"[52] and the risk that "[f]inding jurisdiction appropriate because a bank accepted wire transfers from a company or bank in

---

[49] *See* Doc. 14 (D. McGregor Reply) at 8 ("[T]he acceptance of transfers of money outside the forum jurisdiction does not constitute the type of purposeful activity for which a defendant should expect to be hauled into court.") (internal quotation marks and citation omitted).

[50] *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 764 (S.D.N.Y. 2004) ("[T]he norm of fundamentals of substantial justice does not accord with a finding of minimum contacts where a non-resident bank engages in wire transfers or cash withdrawals on behalf of its clients as part of the financial process."); *see also Dtex, LLC v. BBVA Bancomer, S.A.*, 405 F. Supp. 2d 639, 645 (D.S.C. 2005) (holding that "customer-initiated bank-to-bank wire transfers do not establish the 'continuous and systematic' purposeful presence necessary to establish personal jurisdiction over a foreign bank"); *Plymouth Capital Ltd. v. Three S Farms, Inc.*, 1998 WL 242154, at *3 (N.D. Ill. May 6, 1998) (declining to exercise personal jurisdiction over a foreign bank based on its acceptance of wire transfers from a domestic entity, explaining that "[f]inding jurisdiction appropriate because a bank accepted wire transfers from a company or bank in another state would potentially subject it to jurisdiction in every state"); *Resolution Trust Corp. v. First of America Bank*, 796 F. Supp. 1333, 1335–37 (C.D. Cal 1992) (assessing "whether a non-forum bank has established minimum contacts in California by belonging to a national clearinghouse service association and accepting a wire transfer (or several wire transfers) from a California bank"; concluding that "dealings between banks through wire transfers or similar contacts" are insufficient).

[51] *Dtex*, 405 F. Supp. 2d at 645.

[52] *Id*.

11

another state would potentially subject it to jurisdiction in every state."[53] Neither concern exists in cases like this one involving individual defendants who personally accepted and authorized money transfers from other individuals who lived in and operated out of the forum state.

This Court concurs with Judge Stickman that when analyzing wire transfers for purposes of the traditional specific personal jurisdiction inquiry, the key considerations are who initiated and received the transfers, where the money was transferred from, and why the transfers were made.[54] Here, all three considerations militate in favor of exercising jurisdiction over Douglas. By depositing the checks and causing the transfer of funds from his father's Pennsylvania-based bank account—thereby facilitating his father's alleged efforts to evade his obligations to DR Bank—Douglas "purposefully directed his activities" at Pennsylvania.[55] The first prong of the traditional three-part inquiry is therefore satisfied.

For the second step, DR Bank contends that this suit—which asserts claims for fraudulent transfer and civil conspiracy—"arise[s] out of and relate[s] to Douglas's acceptance of the two $7,000 payments."[56] The Court agrees. The factual premise underlying DR Bank's claims in this case is that Jack McGregor, with the assistance of his son and his current wife, allegedly "transfer[red] assets

---

[53] *Plymouth Capital*, 1998 WL 242154 at *3.
[54] *See Kyko*, 2020 WL 1159439 at *28.
[55] *Burger King*, 471 U.S. at 472 (internal quotation marks and citation omitted).
[56] Doc. 13 (DR Bank Opp.) at 7.

from a Pennsylvania bank account to avoid payment on a Pennsylvania judgment."[57] Put differently, this case arises out of and relates to the transfers from Jack's accounts—including the two $7,000 payments to Douglas. Because this Court considers Douglas's acceptance of the wire transfers activities "purposefully directed" at Pennsylvania, it concludes (as it must) that the claims here "arise out of [and] relate to" Douglas's jurisdictionally relevant conduct.[58] The second prong is satisfied.[59]

For the final step (sometimes described as the "reasonableness prong"), the Court asks whether the exercise of personal jurisdiction over Douglas as it pertains to this matter accords with traditional notions of fair play and substantial justice.[60] It does. The Court agrees with DR Bank that the Commonwealth "has a strong interest in making certain that Pennsylvania judgments are fully satisfied."[61] And given its finding that Douglas purposefully directed activities at Pennsylvania, the

---

[57] *Id.*
[58] *Helpicopteros*, 466 U.S. at 414.
[59] In his reply brief, Douglas emphasizes the lack of evidentiary support for DR Bank's allegation "that Douglas accepted this money 'knowingly' to help his father defraud [DR Bank]." Doc. 14 (D. McGregor Reply) at 6. But that puts the proverbial cart before the horse. DR Bank will have the opportunity in substantive discovery to develop a factual basis for its claim that Douglas knowingly participated in his father's alleged scheme to defraud DR Bank. For purposes of establishing the second prong of the traditional specific personal jurisdiction inquiry, however, DR Bank need only show that the claims as alleged "arise out of or relate to" specific activities "purposefully directed" at Pennsylvania. *Helpicopteros*, 466 U.S. at 414. It has done so.
[60] *See Burger King*, 471 U.S. at 476.
[61] Doc. 13 (DR Bank Opp.) at 9.

Court considers the protestations about "haul[ing] Douglas to a forum that he has zero connection to" both unpersuasive and unavailing.[62]

The traditional specific personal jurisdiction test is therefore satisfied. On this basis, the Court can and will exercise specific personal jurisdiction over Douglas.

### B.   The "Effects Test"

Even if DR Bank was unable to satisfy the traditional specific jurisdiction test, that would not settle the matter as to Douglas. Instead, DR Bank could rely on the distinct "effects test" established by the Supreme Court in *Calder*.[63] And under that legal framework, the Court can exercise specific personal jurisdiction over Douglas as to the intentional tort claims asserted here.

Unlike the traditional specific personal jurisdiction inquiry, which focuses principally on the defendant's contacts with the forum, the *Calder* "effects test" prioritizes the location where the plaintiff suffered the brunt of the harm. Specifically, the Third Circuit instructs that the effects test requires a plaintiff to show the following:

> (1) The defendant committed an intentional tort;
>
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and

---

[62]  Doc. 14 (D. McGregor Reply) at 6.
[63]  465 U.S. at 788–89.

      (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.[64]

By satisfying these three elements, a plaintiff "can demonstrate a court's jurisdiction over a defendant even when the defendant's contacts with the forum alone are far too small to comport with the requirements of due process under [the] traditional analysis."[65]

Despite these differences between the traditional specific jurisdiction analysis and the effects test, the Third Circuit recognizes that the tests "are cut from the same cloth," as both "require a similar type of 'intentionality' on the part of the defendant."[66] Accordingly, the "expressly aimed" element must be met before the first two elements may be considered.[67]

To satisfy the "expressly aimed" requirement, a plaintiff "must demonstrate 'the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.'"[68] Importantly, the Third Circuit as well as other district courts within this circuit have "support[ed]

---

[64] *Marten*, 499 F.3d at 297.
[65] *Id*. (internal quotation marks, ellipses, and citation omitted).
[66] *Id*. (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 n.6 (3d Cir. 2003)).
[67] *Id*.
[68] *Id*. at 298 (citing *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 266 (3d Cir. 1998)).

15

the proposition that an intentional tort seeking to thwart the payment of a judgment is expressly aimed at the forum where judgment was entered."[69]

Here, Douglas knew or should have known that DR Bank would suffer the brunt of the harm caused by his allegedly tortious conduct—that is, accepting the payments from his father, causing the funds to transfer from Pennsylvania to Virginia—in the state where the outstanding judgment was indexed: Pennsylvania. After DR Bank secured a judgment against Jack McGregor in the Superior Court of Connecticut,[70] it learned that Jack relocated to Pennsylvania and then filed a Praecipe to File and Index Foreign Judgment in the Court of Common Pleas of Union County, effectively asking Pennsylvania courts to enforce the judgment debt originating out of Connecticut.[71] Jack challenged DR Bank's efforts to localize the judgment debt in Pennsylvania, but he was rebuffed.[72]

According to DR Bank, Jack made the two separate $7,000 payments to Douglas in 2020—"around the same time as the [Connecticut] Judgment was indexed and [Jack] was served with the relevant documents."[73] Douglas does not

---

[69] *Warren Hill, LLC v. Neptune Investors, LLC*, 2020 WL 2126798, at *3 (E.D. Pa. May 5, 2020) (citing *Gambone v. Lite Rock Drywall*, 288 F. App'x 9, 13–14 (3d Cir. 2008); *Eddystone Rail Co., LLC v. Rios*, 2018 WL 5920746, at *4 (E.D. Pa. Nov. 13, 2018); *DCK/TTEC, LLC v. Postel*, 2015 WL 2341284, at *4 (W.D. Pa. May 14, 2015); *Brocious Trucking, Inc. v. BFL, Inc.*, 2010 WL 569559, at *2 (W.D. Pa. Feb. 11, 2010); *State Farm Mutual, Automobile Insurance Co. v. Tz'doko V'CHESED of Klausenberg*, 543 F. Supp. 2d 424, 430–31 (E.D. Pa. 2008)).

[70] *See* Doc. 1-1, Ex. A (Dec. 18, 2017, Connecticut Superior Court Order).

[71] *See* Doc. 1-2, Ex. B (Jan. 22, 2020, Praecipe to File and Index Foreign Judgment).

[72] *See* Doc. 1-3, Ex. C (Dec. 22, 2020, Order Denying Petition to Open Judgment).

[73] Doc. 1 (Compl.) ¶ 51.

disclaim knowledge of his father's debts to DR Bank or DR Bank's efforts to secure payment on that debt in Pennsylvania;[74] instead, he attempts to explain away the "unusual" timing of the $7,000 payments from his father, asserting that "[i]n reality, the two payments sent to Douglas by his father are far from 'unusual' given the familial relationship."[75] But he then undercuts his own explanation, declaring that "[a]part from these checks, I have not received anything from my father of any material value during the last five (5) years, including monetary payments of any kind."[76] Moreover, as discussed, by accepting the payments from his father—who Douglas knew lived in and operated out of Pennsylvania[77]—Douglas knowingly caused money to be transferred from his father's Pennsylvania-based bank account to Douglas's account in Virginia.

Given DR Bank's judgment debt filing in Pennsylvania, the suspicious timing of Jack's payments to Douglas, and Douglas's acknowledgment that these payments were indeed "unusual" in that they were the only time his father provided him any financial support in the past five years, this Court finds that DR Bank has met its burden, at this juncture, of establishing that Douglas engaged in tortious conduct "expressly aimed" at Pennsylvania—the forum where the

---

[74] *See* Doc. 11-1, Ex. A (Nov. 2, 2022, D. McGregor Decl.).
[75] Doc. 14 (D. McGregor Reply) at 2 n.1.
[76] Doc. 11-1, Ex. A (Nov. 2, 2022, D. McGregor Decl.) ¶ 7.
[77] *See id.* ¶ 4 ("I have visited Pennsylvania for short stays for non-business purposes a handful of times over the last five (5) years," including "once to visit my father in Mifflinburg, Pennsylvania.").

judgment at issue here "was entered."[78] Further, Douglas does not dispute DR Bank's assertion that it felt the "brunt of the harm" of any interference with its "ability to satisfy its Pennsylvania judgment" here in the Commonwealth.[79] Accordingly, DR Bank has satisfied all elements of the effects test and made a *prima facie* showing of this Court's specific jurisdiction over Douglas.

## IV.   CONCLUSION

Contrary to Douglas's claims, wire transfers initiated in, and directed from, the forum state can serve as a district court's basis for exercising personal jurisdiction over the transfer recipient—even when the recipient lived in, and received the transfers outside, the forum. Indeed, this Court finds that the circumstances surrounding Jack's payments to Douglas (sent from Pennsylvania around the time the judgment against Jack was indexed here in the Commonwealth) and the alleged purpose of those payments (to help Jack evade the Pennsylvania judgment) permit this Court to exercise specific personal jurisdiction over Douglas. As such, Douglas's motion to dismiss is denied. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[78] *Warren Hill*, 2020 WL 2126798 at *3.
[79] *See* Doc. 13 (DR Bank Opp.) (citing *M3 USA Corp. v. Hart*, 516 F. Supp. 3d 476, 498 (E.D. Pa. 2021)); *see also* Doc. 14 (D. McGregor Reply) at 8–9.